UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL HANDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-0533-CVE-JFJ |
| | ) |
| TULSA AUTO AUCTION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support (Dkt.# 22). Defendant Tulsa Auto Auction, Inc.[1] argues that plaintiff Samuel Handley's employment was terminated after he negligently caused a serious automobile accident, and there is no evidence suggesting that plaintiff's termination was motivated by racial animus. Dkt. # 22. Plaintiff responds that white drivers were not disciplined or fired after being involved in accidents and black employees were held to a higher standard, and plaintiff claims that there is sufficient evidence from which a reasonable jury could find that the stated reason for his termination was pretextual. Dkt. # 26.

I.

In February 2016, AAA hired Handley as a part-time driver, and AAA's job summary provides the following description of the duties for this position:

---

[1]  Defendant was sued as Tulsa Auto Auction, Inc. Defendant states its correct name is "America's Auto Auction." Dkt. # 22, at 1, fn. 1. Both parties refer to the defendant as America's Auto Auction or "AAA" in their filings, and documents attached to the parties' briefing refers to the defendant as America's Auto Auction, Inc. Although the parties have not filed a notice of name correction for defendant, the Court will refer to the defendant as America's Auto Auction, Inc. or AAA in this Opinion and Order.

> Operate motor vehicles on and off auction premises for transport, pickup and delivery in support of auction activities. Safely move, stage, and park vehicles in the correct lot area. Perform all other duties assigned by supervisor or manager. Must know, practice and ensure that company policies and procedures and state or federal laws are followed at all times.

Dkt. # 22-1, at 1. Handley received AAA's safety rules and guidelines when he was hired, and he signed a statement acknowledging that he had received the rules, watched a safety video, and understood that he could be disciplined for violating AAA's safety rules. Dkt. # 22-2, at 6-7. Handley acknowledged that AAA's rules required that a driver obey all warning tags and safety rules and that a driver must remain behind the wheel while the engine is running. Id. at 7.

On December 19, 2018, Handley was driving a vehicle from the AAA lot to deliver it to a client, and he believed that the vehicle was "running hot." Id. at 3. Handley turned around and headed back to the AAA lot, but the gate operator did not immediately open the gate to the lot. Id. at 4. After waiting about two minutes, Handley put his vehicle in park and he went to manually open the gate, but he did not turn the engine off when he got out of the vehicle. Id. at 4, 7. AAA safety rules require that a driver engage the parking brake before exiting a vehicle, and Handley did not engage the parking brake when he left the vehicle to open the gate. Id. at 7; Dkt. # 22-3, at 10. There was a written warning on the driver's side window stating "Keep E-Brake on! No Park." Dkt. # 22-4, at 5. When Handley approached the gate, the vehicle rolled backwards approximately 100 to 150 yards onto Admiral Drive, and a car traveling on Admiral Drive collided with the AAA vehicle. Id. at 37; Dkt. # 22-5, at 4. Clement Bradley, the regional remarketing manager for AAA, was on site at the AAA lot in Tulsa when the accident occurred, and he went outside after hearing a loud boom or explosion. Dkt. # 22-4, at 1. Both vehicles involved in the accident had sustained heavy damage and had to be towed from the scene, and the driver of the other vehicle appeared to

have sustained multiple bruises in the accident. Id. at 2. Bradley saw the warning concerning the emergency brake written on the driver's side window and took a picture of the warning. Id.

Bradley, an African-American male, spoke to Handley after the accident, and Handley explained that he was driving the GMC Acadia for a delivery, and he was attempting to return the vehicle to the AAA lot. Id. Handley explained that the gate operator was talking to somebody and he decided to open the gate himself, and he left the engine of the vehicle running and did not engage the parking break. Id. Bradley determined that Handley broke at least two of AAA's safety rules. Safety rule 11 requires that a driver remain behind the wheel while the engine is running, and safety rule 33 states that a driver must turn off the ignition and engage the parking brake before leaving a vehicle. Id. Bradley states that he made the decision to terminate Handley's employment with AAA following the accident, because he "grossly" violated AAA's safety rules, ignored a warning written on the driver's side window, and was obviously at fault for causing a serious and preventable accident. Id. at 3. Handley's employment was formally terminated on December 26, 2018. Dkt. # 22-6. The listed reason for the termination was "conduct" and Handley was not eligible to be re-hired. Id.

Handley claims that he was treated differently than other drivers who were involved in automobile accidents. Danny Weddle, a Caucasion part-time driver for AAA, was involved in an accident in which Weddle rear-ended another vehicle when making a left turn at a stop light. Dkt. # 26-7, at 1. The collision was so minor that neither driver reported any damage to their vehicles, but the police did issue a ticket to Weddle as a result of the accident. Id. Weddle was not terminated a result of the accident. Id. Rose Stubblefield, a Caucasian driver, was driving on the highway when the hood of her vehicle blew open and damaged the windshield. Dkt. # 26-10. Stubblefield was not

issued a ticket after the accident and no other vehicles were damaged, and AAA did not discipline Stubblefield after the accident. Dkt. # 22-8, at 4. Roland Coleman, a Caucasian driver, was involved in an accident in August 2018 in which he collided with another vehicle while changing lanes, and the collision forced Coleman into a third vehicle. Dkt. # 26-9, at 12. Coleman was at fault for the accident and he received a ticket, and AAA terminated his employment due to his unsafe driving. Dkt. # 22-8, at 5. Cornell Avington, a black driver, was fired after being involved in a single-vehicle accident. The evidence establishes that Avington was involved in two accidents. On October 24, 2017, Avington collided with a vehicle being backed up by another AAA driver, and the collision resulted in minor damage to the other vehicle. Dkt. # 26-13. There is no evidence that Avington was disciplined after this accident. A second accident occurred when Avington was parking a vehicle during an auction, and he collided with a concrete pole or barrier. Dkt. # 26-5, at 9; Dkt. # 35-1, at 14. The vehicle that Avington was driving was brand new and cost approximately $50,000, and the general manager, Steve Holt, made the decision to terminate Avington's employment for damaging an expensive vehicle due to carelessness. Id. at 13, 15-16. Handley also claims that AAA assigned him the disfavored job of cleaning the car barn, and he believes that AAA disproportionately gave this assignment to African-American employees. Dkt. # 22-7, at 9. Handley's supervisor, William Cartwright, testified at his deposition that he set up a rotation for this job, but all employees were expected to help with cleaning the car barn. Dkt. # 22-8, at 3. Cartwright was aware that employees disliked this job, but he testified that he did not receive any complaints that assignments for this job were racially motivated. Id. Handley testified that he brought a complaint to Cartwright about his concerns of the allegedly discriminatory manner in which this job was assigned, but he did not make complaints to any other person in the chain of

4

command. Dkt. # 26-1, at 10-11. Handley's deposition testimony does not describe when or how often he complained to Cartwright about his concerns of racial discrimination.

Handley filed a charge of discrimination with the Equal Employment Opportunity Commission, and Handley received a notice of right to sue. Dkt. # 2-2, at 1. Handley filed this case in Tulsa County District Court alleging claims under Title VII (first claim for relief) and 42 U.S.C. § 1981 (second claim for relief).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

5

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

AAA argues that plaintiff cannot establish a prima facie case of racial discrimination under Title VII or § 1981 and, even if he can, there is no evidence showing that defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment was pretextual. Dkt. # 22. Plaintiff responds that white drivers were not disciplined for engaging in similar conduct for which his employment was terminated, and AAA's reason for terminating plaintiff's employment was pretextual. Dkt. # 26.

Plaintiff claims that race was a motivating factor in AAA's decision to terminate his employment. Plaintiff does not have direct evidence of discrimination and the Court must apply the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis in reviewing plaintiff's claims of racial discrimination under Title VII and § 1981. Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189 (10th Cir. 2011) (noting that courts review Title VII and § 1981 claims using the same burden-shifting analysis). Plaintiff must first establish a prima facie case of racial discrimination. Carney v. City and County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). To establish a prima facie case of racial discrimination based on a wrongful discharge theory, plaintiff is required to produce evidence raising a genuine dispute as to a material fact showing that "(1) the

victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." EEOC v. PVNF, LLC, 487 F.3d 790, 800 (10th Cir. 2007). If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to come forward with a legitimate non-discriminatory reason for any adverse employment action. Adamson v. Multi Community Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). If the defendant provides a legitimate, non-discriminatory reason for its actions, the burden shifts to the plaintiff to show that the defendant's explanation is pretextual. Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006).

AAA argues that plaintiff cannot establish a prima facie case of discrimination, because there is no evidence tending to show that plaintiff's employment was terminated because of his race. AAA does not contest that plaintiff is a member of a protected class and that he suffered an adverse employment action. Dkt. # 22, at 8. AAA argues that there is no evidence suggesting that plaintiff was treated differently than similarly-situated employees, and his employment was not terminated under circumstances giving rise to an inference of discrimination. Id. at 9-10. A plaintiff's burden at the prima facie case stage is "not onerous" and the Court will assume that plaintiff can establish a prima facie case of racial discrimination. Ortiz v. Norton, 254 F.3d 889, 894 (10th Cir. 2001). The Court will consider the parties' arguments concerning the conduct of allegedly similarly-situated Caucasian employees at the pretext stage of the burden-shifting analysis.

AAA states that it terminated plaintiff's employment after plaintiff caused a serious automobile accident due to his violations of AAA's safety rules. Dkt. # 22, at 10-11. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason

for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendant has stated a legitimate, non-discriminatory reason for terminating plaintiff's employment, and the Court must determine if plaintiff has produced sufficient evidence to show that a genuine dispute as to a material fact exists suggesting that defendant's stated reason is pretextual.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendant's explanation for terminating his employment is pretextual. Plotke v.White, 405 F.3d 1092, 1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Plaintiff claims that "[t]wo sets of rules exist[ed] for white and black drivers at [AAA]," because white drivers involved in accidents were not disciplined while black drivers were fired even if not at fault for the accident. Dkt. # 26, at 1. However, the Court must initially determine whether any of the white drivers were similarly situated to plaintiff and if there is any evidence that white drivers who engaged in similar conduct were treated more favorably. A plaintiff may show that an employer's stated reason for taking an adverse employment action is pretextual by demonstrating that the plaintiff "was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness, provided the similarly situated employee shares the same supervisor, is subject to the same performance standards, and otherwise faces comparable relevant employment circumstances." EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 489 (10th Cir. 2006). The evidence establishes that plaintiff caused a serious automobile accident when he got out of a vehicle with the engine running and he failed to engage the emergency brake. The vehicle had a warning on the driver's side window stating "Keep E-Brake on! No Park." The vehicle rolled backwards approximately 100 to 150 yards onto a busy road, and a collision causing serious damage to both vehicles resulted. The driver of the other vehicle was not seriously injured, but both vehicles had to be towed from the scene of the accident. Plaintiff's employment was terminated as a result of the accident, and the decision to terminate plaintiff's employment was made by Bradley, an African-American male.

In this case, AAA does not dispute that Weddle or Stubblefield held similar jobs, but AAA argues that neither of these employees engaged in conduct of similar severity to the accident caused by plaintiff. Dkt. # 35, at 4-6. The parties do not dispute that Weddle was involved in an accident for which he was at fault and there is no evidence that he was disciplined by AAA. However, the

9

accident was so minor that neither vehicle was damaged and no insurance claim was filed by either driver. The Court also notes that Bradley made the decision to terminate plaintiff's employment, and there is no evidence that Bradley had any role in the decision not to discipline Weddle. Stubblefield was driving a vehicle with a defective hood, and she was forced to pull over when the hood popped open. Plaintiff acknowledges that Stubblefield was not involved in an accident with another vehicle and that no one was injured when Stubblefield pulled off the road. Dkt. # 26, at 13. Neither of these incidents bears any similarity to accident caused by plaintiff's careless behavior. Weddle was involved in a minor accident that did not cause any damage to either vehicle involved, and Stubblefield pulled off the road before any accident could occur. The most relevant comparator identified by plaintiff is Coleman, a former driver for AAA who was fired after causing a multiple vehicle accident on a highway. Coleman received a ticket and was found to be at fault for the accident, and all three vehicles involved in the accident were damaged. Dkt. # 22-8, at 5. Coleman, a Caucasion employee, was terminated by Cartwright following the accident. This shows that AAA consistently terminated the employment of drivers who caused serious accidents regardless of the driver's race. The only other comparator identified by plaintiff is Avington, a black driver, who was fired by the general manager of AAA's Tulsa site, Holt, after Avington drove a brand new vehicle into a concrete pole or barrier. Dkt. # 26-5, at 9. Avington was not disciplined after a previous accident with another AAA driver in which he was apparently not at fault. The Court finds nothing about AAA's treatment of Avington that would suggest that black drivers were held to a different standard. Avington was not disciplined after a minor accident involving another AAA driver, but his employment was terminated after he negligently damaged a new, $50,000 vehicle in a single-vehicle accident. This tends to show that careless driving that caused damage to AAA vehicles was

cause for termination, and both Avington and plaintiff were fired after damaging AAA vehicles through their negligent or careless conduct.

The Court finds no evidence that similarly situated white employees were held to a different standard than black drivers who were involved in accidents. The only incidents for which a driver was terminated involved a driver who negligently or carelessly caused damage to a vehicle or created a risk of harm to third-parties. Plaintiff caused a serious accident when he allowed a vehicle to roll onto a busy road, and he violated AAA safety rules and ignored a warning on the driver's side window of the vehicle. The decision to terminate plaintiff's employment was made by Bradley, also an African-American male, and plaintiff has not shown that white employees involved in accidents of similar severity were treated more leniently than plaintiff. Plaintiff also argues that black drivers were required to clean the car barn and he claims that he complained about this to Cartwright before he was terminated. Dkt. # 22-7, at 9; Dkt. # 26-1, at 10-11. However, plaintiff is not seeking relief under a hostile work environment theory, and plaintiff has not made any attempt to tie his complaint about the car barn to the discrete decision to terminate his employment after the accident. Plaintiff has not met his burden to show that defendant's legitimate, non-discriminatory reason for terminating his employment was pretextual, and summary judgment should be entered in favor of AAA on plaintiff's Title VII and § 1981 claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt.# 22) is **granted**, and a separate judgment is entered herewith.

**DATED** this 2nd day of December, 2020.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE